[Cite as *State v. Alvarado*, 2017-Ohio-2810.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Court of Appeals No. L-16-1077

    Appellee

Trial Court No. CR0201301381

v.

Hector Alvarado, Jr.

**DECISION AND JUDGMENT**

    Appellant

Decided:  May 12, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, Frank H.
Spryszak and Evy M. Jarrett, Assistant Prosecuting Attorneys,
for appellee.

Timothy Young, Ohio Public Defender, and Joanna L. Sanchez,
Assistant State Public Defender, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Hector Alvarado, Jr., appeals the March 16, 2016 judgment of the

Lucas County Court of Common Pleas.  For the reasons that follow, we affirm.

**{¶ 2}** Appellant sets forth two assignments of error:

Assignment of Error no. 1: The trial court abused its discretion when it denied Mr. Alvarado's motion for leave to file a motion for a new trial without holding a hearing on the issue of whether Mr. Alvarado was unavoidably prevented from discovery of the key witness's recantation.

Assignment of Error no. 2: The trial court erred as a matter of law in denying Mr. Alvarado's petition for post-conviction relief without holding a hearing on the issue of whether Mr. Alvarado was unavoidably prevented from discovery of the key witness's recantation.

### Background

**{¶ 3}** The facts of this case are fully set forth in *State v. Alvarado*, 6th Dist. Lucas No. L-13-1225, 2015-Ohio-75. The facts relating to the instant appeal follow.

**{¶ 4}** In the early morning of January 1, 2013, numerous patrons were at the South Beach Bar ("bar") on Alexis Road in Toledo, Lucas County, Ohio, including Christine Henderson, her fiancée, Stacy Bowen, appellant and Charles Wells. A melee occurred at the bar, in the course of which patrons fought each other, and tables and chairs were thrown. During the commotion, Henderson was stabbed in the neck and Bowen was cut on his upper arm. While Bowen recovered from the wound to his arm, Henderson died as a result of the neck wound. A police investigation ensued.

**{¶ 5}** Police spoke with bar employees and patrons and reviewed footage from several surveillance cameras located in and around the bar. On January 8, 2013, a

2.

detective contacted Charles Wells. Wells told the detective what he saw at the bar, then Wells went to the police station and gave a recorded statement.

{¶ 6} Appellant was also contacted by police and was interviewed on February 28, 2013. The interview was conducted at the police station and was both audio and video recorded.

{¶ 7} On March 8, 2013, appellant was indicted on one count of murder, as to Henderson, and one count of felonious assault, as to Bowen. A jury trial was held in August 2013. Wells was called by the state and testified at trial to the following. Wells had a felony record and had been to prison a number of times. Wells had pending cases but was not promised anything by the prosecutor to testify; Wells was testifying "for the family."

{¶ 8} Wells was at the bar on January 1, 2013, when the fight broke out. Wells was not involved in the fight, he just observed it. Wells was watching appellant because appellant was the biggest guy in the bar. Wells noted appellant had "tattoos [o]n his head." Wells saw appellant fighting and "swing on" Henderson, then Henderson walked away and put her hand up to her neck. Wells noticed an object in appellant's hand. Wells also witnessed appellant "swing on" Bowen and Bowen "backed up off" of appellant. Wells then exited the bar with appellant right behind him. Wells was walking backwards and "seen [sic] him [appellant] with a Mexican girl in one hand. I seen [sic] him with a knife in another hand." Wells did not know appellant, but he knew Henderson because of the vehicle she drove and Wells knew Bowen from the neighborhood.

3.

**{¶ 9}** On cross-examination, defense counsel said to Wells, "you didn't tell the detective he [appellant] stabbed anyone back in February but - but now you're implying that you saw Mr. Alvarado with a knife hitting Miss Henderson in the neck, right?" Wells responded that he informed the detective that appellant had an object in his hand when he was swinging and that appellant "was the one that did it [the stabbing]." Wells was then questioned about his pending cases, including felony charges. Wells acknowledged he had pending cases but insisted he did the time for whatever he did. Wells said, "I don't come down here playing with the courts. I ain't never took nothing [sic] to trial. I come in here, I accept my punishment, I go to prison, I come back home a free man."

**{¶ 10}** Appellant's interview with police was also played for the jury. In addition, videos and still shots from cameras in and around the bar were introduced by the state at trial and presented to the jury. Appellant was found guilty of murder and not guilty of felonious assault. Thereafter, appellant was sentenced to 15 years to life in prison. Appellant appealed and we affirmed his conviction on January 9, 2015.

**{¶ 11}** On December 18, 2015, appellant filed with the trial court, inter alia, a motion for leave to file a motion for a new trial and a petition for postconviction relief. In support of his motion and petition, appellant filed numerous exhibits including his own affidavit and the affidavits of Wells, Basilia Smith, Nolberto Armenta, DeAna and Mario Parraz. All of the affiants were present at the bar at the time of the fight and all of the affiants, save Wells, were acquainted with appellant.

4.

**{¶ 12}** In his affidavit, Wells recanted his trial testimony, stating "[t]he reason I am here is to clear my conscious. [sic] I feel bad. I was coached by the prosecutor and persuaded to lie on the stand. I did not know at the time that I would be their only witness and my testimony was material to their case." Wells further stated, "I didn't really see nobody with no knife." [sic] Wells averred the prosecutor promised to make Wells' pending cases "go away." However, the prosecutor "disappeared. I could never get ahold of him and I ended up doing time." Wells also averred "[t]he family was so upset I thought I was doing the right thing. It's been on my conscious, [sic] it's been weighing on me." In addition, Wells averred "[p]rior to today, no one, including Hector Alvarado, had reason or knowledge [t]o suspect I would cooperate and make the following admissions."

**{¶ 13}** Appellant, in his affidavit, averred "I did not understand the nature of the charges against me until my post-appellate counsel explained them to me." Appellant stated "[p]rior to November 2015, I did not expect Charles Wells to revise his previous testimony. I knew he lied because he never saw me stab anyone and because I never had a knife, but I did not know that it weighed on his conscious [sic] enough to set the story straight and tell the truth."

**{¶ 14}** The state filed a motion to dismiss the motion for leave to file a delayed motion for new trial and a motion to dismiss/motion for summary judgment as to the petition for postconviction relief. The state argued none of the evidence submitted by

5.

appellant was new except for Wells' statement recanting his testimony at trial that he saw appellant with a knife.

{¶ 15} On March 16, 2016, the trial court, without holding a hearing, denied both the motion and the petition as untimely and granted the state's motions to dismiss. The trial court found because appellant failed to demonstrate he was unavoidably prevented from bringing his claims for relief within the applicable limitations periods, his motion and petition were untimely. Appellant appealed.

## Arguments

{¶ 16} We will address appellant's assignments of error together.

{¶ 17} Appellant contends the trial court erred in not holding a hearing as to whether he was unavoidably prevented from discovering that Wells would want to clear his conscience and admit he gave false testimony at trial. Appellant claims his affidavit and Wells' affidavit "make clear that no one, including Mr. Alvarado, had any reason to believe or suspect that Mr. Wells would want to 'clear his conscience' and admit that the testimony he provided at the trial was false." While appellant acknowledges he knew Wells gave false testimony at trial, appellant asserts the basis for his motion for leave was Wells' admission that he falsely testified.

{¶ 18} The state counters appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering Wells' recantation outside of the applicable time limits, as neither appellant's affidavit nor Wells' affidavit sets forth when Wells decided to recant his testimony or when appellant learned of the recantation.

6.

{¶ 19} In reply, appellant argues he did establish he was unavoidably prevented from discovering the new evidence due to the state's suppression of material, exculpatory evidence as well as appellant's counsel's conflict of interest. The exculpatory evidence consists of Wells' statements that he was coached by the prosecutor and convinced to lie, and the agreement between Wells and the prosecutor for the prosecutor to help Wells with his pending charges. Appellant alleges his trial counsel had a conflict of interest because counsel had previously represented Wells but did not disclose this fact to appellant.

### New Trial Standard

{¶ 20} Crim.R. 33(B) provides, in pertinent part:

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 21} A defendant may only file a motion for new trial based upon newly discovered evidence beyond the 120-day period set forth in Crim.R. 33, if the defendant first files a motion for leave and demonstrates by clear and convincing evidence that he

7.

was unavoidably prevented from timely filing the motion for new trial.  *State v. Thompson*, 6th Dist. Lucas No. L-15-1006, 2016-Ohio-1399, ¶ 15.

> "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence."  *State v. Sandoval*, 6th Dist. Sandusky Nos. S-13-032, S-13-034, 2014-Ohio-4972, ¶ 13, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).  *Id.*

{¶ 22} Ignorance of the law and of legal procedure is not clear and convincing proof that a party was unavoidably prevented from discovering evidence, since all persons are conclusively presumed to know the law.  *State v. Marshall*, 5th Dist. Richland No. 00CA26, 2000 Ohio App. LEXIS 4118, *5-6 (Sept. 6, 2000).  Moreover, an affidavit executed outside of the time limit set forth in Crim.R. 33 which "'fails to offer any reason why it could not have been obtained sooner is not adequate to show by clear and convincing proof that the evidence could not have been obtained within the prescribed time period.'"  (Citations omitted.)  *State v. Peals*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶ 25.

8.

{¶ 23} A defendant is only entitled to have a hearing on his motion for leave if he offers the trial court evidence which on its face supports his claim that he was unavoidably prevented from timely discovering this new evidence. *Thompson* at ¶ 15.

{¶ 24} Appellate review of the denial of a motion for leave to file a delayed motion for new trial is based on an abuse of discretion standard. *Id.* at ¶ 16. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Postconviction Relief Standard

{¶ 25} A petition for postconviction relief "shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). A trial court lacks jurisdiction to consider an untimely petition, unless the delay is excused under R.C. 2953.23(A). *State v. Guevara*, 6th Dist. Lucas No. L-12-1218, 2013-Ohio-728, ¶ 8. A late filing is excused "if the petitioner can show that he was unavoidably prevented from discovery of the facts upon which the claim for relief is based and but for the constitutional errors, no reasonable factfinder would have found petitioner guilty." R.C. 2953.23(A)(1)(a) and (b).

{¶ 26} A petitioner is not automatically entitled to a hearing on his petition for postconviction relief. *State v. Calhoun*, 86 Ohio St.3d 279, 282-283, 714 N.E.2d 905 (1999). If the petition is untimely and the petitioner does not show he was unavoidably

9.

prevented from discovering the facts upon which he now relies, the petition should be denied without a hearing. *State v. Baker*, 8th Dist. Cuyahoga No. 78453, 2001 Ohio App. LEXIS 1305, *7 (Mar. 22, 2001).

{¶ 27} The trial court's denial of a petition for postconviction relief without a hearing is reviewed on appeal under an abuse of discretion standard. *State v. Sandoval*, 6th Dist. Sandusky Nos. S-13-032, S-13-034, 2014-Ohio-4972, ¶ 32.

**Analysis**

{¶ 28} Here, appellant was convicted in August 2013, and he filed his motion for leave to file a motion for new trial and petition for postconviction relief in December 2015, well beyond the 120-day limit in Crim.R. 33 and the 360-day limit set forth in R.C. 2953.23(A). Thus, appellant was required to establish that he was unavoidably prevented from timely discovering the evidence upon which he relies. Moreover, in order for appellant to be entitled to a hearing on his motion for leave or petition for postconviction relief, the evidence submitted to the trial court by appellant must have, on its face, supported his claim that he was unavoidably prevented from timely discovering the evidence upon which he now relies.

{¶ 29} As an initial matter, we note no argument or issue was raised by appellant at the trial court level or in his briefs before us concerning the timeliness of discovery of the information in the affidavits of Basilia Smith, Nolberto Armenta, DeAna and Mario Parraz and the Toledo Police Department Supplemental Crime Report of Detective Rider, which sets forth a summary of Wells' interview with Detective Goodlet, all of which

10.

were filed by appellant in support of his motion for leave and petition for postconviction relief. We will therefore only concern ourselves with whether the affidavits of appellant and Wells, on their face, support the claim that appellant was unavoidably prevented from timely discovering the new evidence on which he relies.

{¶ 30} A review of appellant's affidavit and Wells' affidavit reveals no indication as to why or when Wells had a change of conscience and decided to cooperate and recant his trial testimony. There is no averment in either affidavit as to what prompted Wells to contact appellant's current counsel, or when or how Wells became aware of appellant's current counsel. In addition, neither affidavit mentions why appellant nor his counsel did not or could not contact Wells prior to November 2015, when Wells executed his affidavit, to secure Wells' cooperation.

{¶ 31} In light of the foregoing, we find the affidavits on their face fail to establish that appellant was unavoidably prevented from discovering the new evidence upon which he now relies. Thus, the trial court did not abuse its discretion in denying both appellant's motion for leave to file a motion for new trial and petition for postconviction relief without holding a hearing. Accordingly, appellant's assignments of error are not well-taken.

{¶ 32} The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                      _____
                                                  JUDGE

Arlene Singer, J.                                             

                                                  _____
Thomas J. Osowik, J.                                         JUDGE
CONCUR.

                                                  _____
                                                  JUDGE